**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JOHN ROBERT CLIFTON,

    Petitioner,

v.                                                            Case No. 8:13-cv-3226-T-33MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

John Robert Clifton, a Florida inmate, filed a *pro se* amended petition for writ of habeas corpus under 28 U.S.C. § 2254 and memorandum of law. (Doc. 24.) He challenges his convictions entered by the circuit court for the Tenth Judicial Circuit, in and for Polk County. Respondent filed a response (Doc. 28) and Clifton filed a reply (Doc. 31). Upon consideration, the amended petition is denied.

## PROCEDURAL HISTORY

Clifton was charged with driving under the influence (count one), possession of cannabis (count two), battery on a law enforcement officer (count three), resisting an officer with violence (count four), and escape (count five). (Doc. 14, Ex. 1, pp. 14-17.) The State dismissed count two. (Doc. 14, Ex. 1a, p. 87.) A jury found Clifton not guilty of count one but convicted him of the remaining counts. (Doc. 14, Ex. 1, pp. 104-05.) He was sentenced to a term of three years in prison, consecutive to any prison sentence he was already serving. (*Id.*, pp. 128, 155.) The state appellate court *per curiam* affirmed. (Doc.

14, Ex. 4.) Clifton's motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850 was summarily denied. (Doc. 30, Ex. 7, pp. 5-36.) The state appellate court *per curiam* affirmed. (Doc. 30, Ex. 11.)

### STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must demonstrate that the state court's adjudication of his federal claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2).

### EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). *See also Pearson v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 847, 849-50 (11th Cir. 2008) ("The exhaustion doctrine requires the

petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.") (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

## DISCUSSION

**Ground One**

Clifton was charged following a traffic stop. Prior to trial, Clifton filed a motion to suppress "[a]ll physical evidence, observations by officers, admissions by [Clifton], and testimony from the Officer which occurred during and after the seizure and subsequent search of [Clifton] and of the search of the vehicle in this matter, including all items from inside the vehicle and all items found on [Clifton]." (Doc. 14, Ex. 1, p. 18) (emphasis in

original).  Clifton asserted that the evidence was seized in violation of his Fourth and Fourteenth Amendment rights.  (*Id.*)  The trial court denied his motion to suppress following an evidentiary hearing.

Clifton alleges that the trial court erred in denying his motion to suppress because police "had insufficient evidence to initiate a traffic stop." (Doc. 24, p. 5.)  His claim is barred from federal habeas review.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). The phrase "'opportunity for full and fair litigation' means just that: an opportunity."  *Lawhorn v. Allen*, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting *Caver v. State of Ala.*, 577 F.2d 1188, 1192 (5th Cir. 1978)).  *See also Mincey v. Head*, 206 F.3d 1106, 1126 (11th Cir. 2000) ("[W]here there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.") (quoting *Tukes v. Dugger*, 911 F.2d 508, 513-14 (11th Cir. 1990)).

The record demonstrates that Clifton was provided an opportunity for full and fair litigation of his Fourth Amendment claim before the state trial and appellate courts.  The state trial court held an evidentiary hearing on Clifton's motion to suppress. (Doc. 14, Ex. 1, pp. 20-76.)  At the hearing, Clifton and Deputy Tanner Owens, who conducted the traffic stop, both testified, and the parties presented legal argument.  (*Id.*, pp. 24-75.)  The trial

court denied Clifton's motion to suppress in a written order. (*Id.*, pp. 77-78.)[1]  Clifton challenged the trial court's ruling on direct appeal. (Doc. 14, Ex. 2, pp. 12-24.)  Because Clifton had an opportunity for full and fair litigation of his Fourth Amendment claim in state court, Ground One is barred from federal habeas review.

**Ground Two**

Clifton alleges that the prosecutor committed misconduct by making improper comments during closing argument and that the trial court erred in failing to provide a curative instruction to the jury following these remarks.  He asserts that, as a result, his federal right to due process was violated.  These claims are unexhausted because, although Clifton argued prosecutorial misconduct and trial court error on direct appeal, he presented the claims in terms of state law and did not assert any federal constitutional violations. (Doc. 14, Ex. 2, pp. 25-28.)  As state procedural rules do not allow successive appeals, *see* Fla. R. App. P. 9.140(b)(3), Clifton's federal due process claims are procedurally defaulted.  *See Smith*, 256 F.3d at 1138.

Clifton alleges that he has established cause to overcome the default in that his counsel was ineffective for not presenting the allegations of prosecutorial misconduct and trial court error as federal claims. Ineffective assistance of counsel can constitute cause to overcome a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  First, however, the petitioner must raise the allegation of ineffective assistance in state court. *See id.* ("[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim . . . [that must]

---

[1] The trial court made findings of fact in its written order. (Doc. 14, Ex. 1, p. 78.) Therefore, the *Stone* preclusion applies. *See Hearn v. Florida*, 326 Fed. App'x 519, 522 (11th Cir. 2009).

be first raised in state court.") (emphasis in original).

The court recognizes that Clifton attempted to meet *Carpenter*'s requirement by arguing in his postconviction motion that his counsel was ineffective for not raising the federal nature of his claims, and that the state court did not expressly rule on this portion of his postconviction motion. (Doc. 30, Ex. 7, pp. 5-19.) Although Clifton alleged that his trial counsel was ineffective, he failed to specifically allege ineffective assistance of appellate counsel in his postconviction motion. (*Id.*, pp. 5-18.) Furthermore, an allegation that appellate counsel was ineffective for failing to present the federal nature of the claims when he asserted them on direct appeal would have been properly raised in a petition for writ of habeas corpus filed in the state appellate court. Fla. R. App. P. 9.141(d). But Clifton did not file any state habeas petition alleging ineffective assistance of appellate counsel. As Clifton therefore failed to raise in state court the underlying allegation of ineffective assistance of counsel that potentially could have established cause for his default, he cannot overcome the procedural default through the cause and prejudice exception.

Nor does Clifton overcome the procedural default through the applicability of the fundamental miscarriage of justice exception. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup*, 513 U.S. at 327. While Clifton alleges in his memorandum of law that he is actually innocent, he fails to make the necessary showing to overcome the default. "To overcome procedural default through a showing of actual innocence, the petitioner must present 'reliable evidence . . . not presented at trial' such that 'it is more likely than not that no reasonable juror would have convicted him of the underlying offense.'" *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d

1000, 1011 (11th Cir. 2012) (quoting *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)). But Clifton has failed to identify any new reliable evidence not presented at trial. Accordingly, Clifton has not demonstrated the applicability of an exception to overcome the procedural default of his claims.

Alternatively, notwithstanding the default, Clifton's claims are without merit. As addressed, the charges against Clifton stemmed from a traffic stop conducted by Deputy Owens. It is undisputed that after Clifton was pulled over, he exited his vehicle and Deputy Owens used his Taser on Clifton. Deputy Owens and Clifton gave differing testimony about the details of this incident. Deputy Owens testified that when he placed Clifton under arrest, Clifton turned around and pushed him. (Dkt. 14, Ex.1a, p. 115.) Deputy Owens testified that Clifton tried to get back into his car but that they struggled and Clifton shoved him again. (*Id.*, pp. 115-17.) Deputy Owens testified that he deployed his Taser, causing Clifton to fall into the driver's seat. (*Id.*, pp. 119-20.) Deputy Owens testified that Clifton was pushing on the accelerator, revving the engine. (*Id.*, pp. 123-25.) Deputy Owens used his Taser again, and as Clifton attempted to shift the car into drive, Deputy Owens was able to take the keys from the ignition. (*Id.*, pp. 124-26.)

In contrast, Clifton denied striking Deputy Owens or attempting to get back into his car and leave. (Doc. 14, Ex. 1b, pp. 257-58.) Clifton also testified that Deputy Owens used the Taser immediately when he exited his car. (*Id.*, p. 253.) Clifton testified, "[Deputy Owens] actually put that thing on my back and burnt me like a cow or a pig. That's how he did me. He branded me. . . . [Deputy Owens] got the Taser on me and it's knocking me out. A pig or a cow couldn't stand that Taser." (*Id.*, pp. 256-57.)

The prosecutor addressed this testimony in his closing argument:

[STATE]: Deputy Sheriff Owens, yeah, he's a young officer.  Are there some things that we can think of that perhaps could have been done different to make it a safer situation?  Yeah, we could.  But do you believe Deputy Sheriff Owens conducted that horrible story that you were told by the defendant?  Tasing him like a pig, jumping all on him?  No.  **If that happened, the State of Florida would not be before you with this case**.

[COUNSEL]: Objection.

THE COURT: Sustained.

[STATE]: **That's why the defendant's guilty**.  Thank you very much.

[COUNSEL]: I move to strike that, Your Honor, and ask for a curative.

THE COURT: Sidebar.

    (The following Bench Conference took place outside the hearing of the jury.)

THE COURT: Okay.  Restate exactly what was - -

[STATE]: I said if Deputy Sheriff Owens did what the defendant said he did, the State of Florida would not be before you today.  How - -

[COUNSEL]: That this case wouldn't be here, that there wouldn't have been a case.

[STATE]: How - -

THE COURT: Wait a second.  Let him finish.

[STATE]: I don't understand how that is improper. . .

[COUNSEL]: [ ] It's about that because - - just because the State filed charges that we need to give that weight, and that's not true, because you read the information and you say, "This is not evidence," but that - -

[STATE]: That's not - -

THE COURT: Wait a second - -

[COUNSEL]: The argument is when you read the information . . . When you read the information, you tell the jury the fact that the State has filed the

> information is not to be considered as evidence of guilt, and that is what [the prosecutor] is doing. He's saying that we wouldn't have filed these charges if - - you know what I mean?
>
> THE COURT: We wouldn't, but no - -
>
> [COUNSEL]: So there's no value to the defendant's testimony because we filed these charges.
>
> [STATE]: That's - -
>
> THE COURT: In an abundance of caution, I sustain the objection, but he's right in that if what the defendant said is true, we wouldn't be here today. If it were proven true, we wouldn't be here today. I'm not going to do a curative instruction. I sustain your objection.
>
> (End of Bench Conference.)

(Doc. 14, Ex. 1b, pp. 293-95) (emphasis added).

The prosecutor's comments were improper. The comments offered the prosecutor's personal opinion of Clifton's guilt and vouched for Deputy Owens's credibility. "[A]ttempts to bolster a witness by vouching for his credibility are normally improper and constitute error." *United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1994) (citing *United States v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977)). A prosecutor may not "seek to invoke his personal status as the government's attorney or the sanction of the government itself as a basis for conviction of a criminal defendant." *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979). Similarly, "[a] prosecutor is expected to refrain from offering his personal views on a defendant's guilt or on the evidence." *United States v. Rivera*, 780 F.3d 1084, 1100 (11th Cir. 2015) (citing *Parker v. Allen*, 565 F.3d 1258, 1273 (11th Cir. 2009)). The Supreme Court has explained:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the

> jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985) (citing *Berger v. United States*, 295 U.S. 78, 88-89 (1935)).

That the comments were improper does not entitle Clifton to federal habeas relief, however. He must show that the improper comments prejudiced his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995) (citing *Kennedy v. Dugger*, 933 F.2d 905, 914 (11th Cir. 1991)). *See also Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair.").

A reviewing court must evaluate an allegedly improper comment in the context of the whole trial because "[c]laims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." *Hall*, 47 F.3d at 1098. *See also United States v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998) ("In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury.") (citing *Young*, 470 U.S. at 11-12 and *United States v. Stefan*, 784 F.2d 1093, 1100 (11th Cir. 1986)).

Clifton has not established that in the context of the entire trial, the prosecutor's comments prejudiced his substantial rights. For instance, the effect of the court's

instructions to the jury must be considered.  *See United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990) ("Because statements and arguments of counsel are not evidence, improper statements can be rectified by the [trial] court's instruction to the jury that only the evidence in the case be considered.") (citations omitted).  Although the trial court did not provide a curative instruction in response to the identified comments, it did provide multiple instructions consistent with *Smith* concerning the evidence the jury could consider.

The court instructed the jury that "what the attorneys say is not evidence." (Doc. 14, Ex. 1b, p. 263.)  The court further instructed the jury that it "is to the evidence introduced in this trial and to it alone that you are to look for . . . proof [of guilt]"; that "this case must be decided only upon the evidence that you have heard from the answers of the witnesses and have seen in the form of the exhibits and evidence and these instructions"; and that the verdict "must be based on the evidence and on the law contained in these instructions." (*Id.*, pp. 302, 304, 305.)  The court also told jury that the charging information "is not evidence and is not to be considered by you as proof of guilt." (Doc. 14, Ex. 1a, p. 91.) "[J]urors are presumed to follow the court's instructions." *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001).  Accordingly, it is presumed that the jurors only looked to the evidence introduced in the trial for proof of guilt and did not consider the prosecutor's statements as evidence.

Moreover, the State presented sufficient evidence such that the jury could find Clifton guilty.  To establish battery on a law enforcement officer, the State had to prove beyond a reasonable doubt that 1) Clifton intentionally touched or struck Deputy Owens against his will, 2) Deputy Owens was a law enforcement officer, 3) Clifton knew Deputy Owens was a law enforcement officer, and 4) Deputy Owens was engaged in the lawful

performance of his duties at the time of the battery. (Doc. 14, Ex. 1, p. 98.) Deputy Owens testified that he worked for the Polk County Sheriff's Office and was responding to a complaint of a reckless driver. (Doc. 14, Ex. 1a, pp. 105-06.) He also testified that at the time of the traffic stop, he activated the emergency lights on his marked patrol car, and that he wore a standard uniform with a badge, insignia, and gun belt. (*Id.*, pp. 107, 113.) Deputy Owens testified that when he told Clifton he was under arrest and attempted to handcuff him, Clifton turned around and pushed him in the chest. (*Id.*, pp. 114-15.)

To establish resisting an officer with violence, the State had to prove beyond a reasonable doubt that 1) Clifton knowingly and wilfully resisted, obstructed, or opposed Deputy Owens "by offering to do him violence," 2) Deputy Owens was engaged in the lawful execution of a legal duty at the time, 3) Deputy Owens was a law enforcement officer at the time, and 4) Clifton knew Deputy Owens was a law enforcement officer at the time. (Doc. 14, Ex. 1, p. 99.) In addition to the above information, Deputy Owens testified that he and Clifton physically struggled as Clifton attempted to get back into his car following the arrest. (Doc. 14, Ex. 1a, pp. 115-19.) Deputy Owens further testified that as he tried to remove the keys from the ignition, Clifton hit Deputy Owens and Deputy Owens told Clifton to stop resisting and stop hitting him. (*Id.*, pp. 125-26.) Deputy Owens testified that he eventually placed Clifton on the ground, but that they continued to struggle and Clifton nearly hit Deputy Owens by "flailing his elbows." (*Id.*, pp. 127-28.)

Additionally, Sergeant Shawn Stephenson, who arrived to provide backup, observed Deputy Owens and Clifton struggling on the ground. (Doc. 14, Ex. 1b, pp. 210-11.) Sergeant Stephenson testified that both he and Deputy Owens told Clifton to stop resisting but that Clifton continued to resist by reaching underneath himself and attempting to get

up. (*Id.*, pp. 211-12.)

Finally, to establish escape, the State had to prove beyond a reasonable doubt that 1) Clifton was under arrest and in the lawful custody of a law enforcement official; 2) while a prisoner, Clifton was being transported to or from a place of confinement; and 3) Clifton escaped or attempted to escape from such custody, intending to avoid lawful confinement. (Doc. 14, Ex. 1, p. 100.) The jury was instructed that "[t]ransportation to a place of confinement begins at the time an individual is placed under arrest" and that:

> An "arrest" takes place when the arresting officer intends to arrest; the arresting officer actually or constructively seizes the person to be arrested; the officer's intent to arrest is communicated by the arresting officer to the person to be arrested; and the person to be arrested understands that communication. An "arrest" does not require that the law enforcement officer complete the act of acquiring total physical control over the person to be arrested.

(*Id.*)

Deputy Owens's testimony supports the conclusion that Clifton was under arrest and in lawful custody, and that Clifton understood he was under arrest. Specifically, Deputy Owens testified that he told Clifton he was under arrest and began placing handcuffs on him, but that "as soon as the metal [of the handcuffs] touched his wrist, [Clifton] turned around and shoved [him] in the middle of [his] chest." (Doc. 14, Ex. 1a, p. 115.) In accordance with the jury instructions, the jury could conclude that when Clifton was under arrest at that time, transportation to a place of confinement had commenced. The evidence also supports a finding that Clifton escaped or attempted to escape from custody to avoid lawful confinement. Deputy Owens testified that after Clifton pushed him when he was about to be handcuffed, Clifton tried to get back into his car. (*Id.*, pp. 115-16.) Thus, the State adduced sufficient evidence at trial for the jury to find Clifton guilty.

In light of this evidence and the court's instructions to the jury, Clifton has not shown a reasonable probability that the outcome of the trial would have been different but for the prosecutor's improper comments. *See Hall*, 47 F.3d at 1098. He has not established that, in the context of the entire trial, the prosecutor's improper comments prejudiced his substantial rights. *See id*; *Hernandez*, 145 F.3d at 1438. Furthermore, as the comments did not render the trial fundamentally unfair, Clifton has not shown any federal constitutional violation as a result of the trial court's failure to give the requested curative instruction. Clifton is not entitled to relief on Ground Two.

**Clifton's Memorandum of Law: Grounds Three Through Five**

Clifton raises three additional claims in his memorandum of law.

**Ground Three**

Clifton asserts that he is actually innocent of the offenses. However, any freestanding actual innocence claim that he intends to present is not cognizable in this federal habeas proceeding. *See Schlup*, 513 U.S. at 315 ("[A] claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *Cunningham v. Dist. Atty's Office for Escambia County*, 592 F.3d 1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases.") (citing *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007)).

**Ground Four**

Clifton argues that appellate counsel was ineffective for failing to assert that the State violated *Giglio v. United States*, 405 U.S. 150 (1972) by presenting false testimony

of Deputy Owens. This claim is unexhausted because Clifton did not present it in a state habeas petition under Florida Rule of Appellate Procedure 9.141(d). Clifton cannot return to state court to file an untimely petition. *See* Fla. R. App. P. 9.141(d)(5). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

Clifton does not assert cause and prejudice to overcome the default. Nor does his allegation of actual innocence establish the fundamental miscarriage of justice exception. As addressed, he has not shown any new reliable evidence not presented at trial. *See Schlup*, 513 U.S. at 327; *Rozzelle*, 672 F.3d at 1011. Accordingly, Clifton has not overcome the procedural default, and Ground Four is barred from review.

**Ground Five**

Clifton claims that he "was prejudiced by the ineffective assistance of counsel due to abandonment of his newly discovered evidence that was obtained at trial during Deputy Owens' impeachment when he gave inconsistent statements about reckless driving at trial." (Doc. 24, p. 27.) It is not clear whether Clifton raises this argument as part of his claim of ineffective assistance of appellate counsel that was addressed in Ground Four above, or whether he intends to raise a distinct claim that trial counsel was ineffective for abandoning newly discovered evidence of Deputy Owens's inconsistent statements. Any claim of ineffective assistance of trial counsel for abandoning newly discovered evidence is unexhausted because Clifton did not present it in his postconviction motion. (Doc. 30, Ex. 7, pp. 5-18.) Clifton cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Therefore, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Clifton has not argued or demonstrated the applicability of the cause and prejudice exception. For the same reasons

addressed above, he has not shown that the fundamental miscarriage of justice exception applies. Consequently, Clifton's claim is procedurally defaulted and barred from review.

It is therefore

**ORDERED** that Clifton's amended petition for writ of habeas corpus (Doc. 24) is **DENIED**. The Clerk is directed to enter judgment against Clifton and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is **ORDERED** that Clifton is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Clifton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Clifton has not made the requisite showing. Finally, because Clifton is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on August 7, 2017.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

John Robert Clifton; Counsel of Record